|  |  |  |
|---|---|---|
| **DISABILITY RIGHTS MISSISSIPPI,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 2:11cv53KS-MTP** |
| **v.** | ) | |
| | ) | |
| | ) | |
| **FORREST COUNTY,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S**
**MOTION FOR PRELIMINARY INJUNCTION**

## I. Introduction

The Plaintiff in this action is a non-profit organization with a federal mandate to protect the rights of people with disabilities throughout the state of Mississippi—including, but not limited to, children with disabilities who are detained in juvenile detention centers. In violation of clearly established federal law, Forrest County officials have denied Plaintiff Disability Rights Mississippi ("DRMS") access to the Forrest County Juvenile Detention Center. Federal law specifically empowers DRMS with the authority to conduct confidential visits with residents of any facility that houses people with disabilities, examine relevant records, and perform inspections of the facility. In the wake of reports that the detention facility at the Forrest County Juvenile Center ("Detention Center") subjects children with disabilities to unlawful abuse and neglect—DRMS made numerous requests to exercise its access authority in the Detention Center by contacting Forrest County officials and agents, to attempt to work collaboratively with the

County and other juvenile justice stakeholders to ensure that children detained at the Detention Center are free from abuse and neglect. Despite DRMS's unambiguous access authority Forrest County officials have barred DRMS from exercising this authority at the Detention Center. DRMS is therefore required to seek relief from this Honorable Court, and submits the following Memorandum in Support of its Motion for Preliminary Injunction, which seeks to compel the County to comply with federal law by allowing DRMS to monitor the detention facility at the Forrest County Juvenile Center, and to fully investigate allegations of abuse and neglect.

Because the Plaintiff easily meets the standard for issuance of preliminary injunctive relief, this Court should grant the Plaintiff's motion.

## I.  <u>Statement of Facts</u>

This case arises out of DRMS's efforts to fulfill its mandates under the Protection and Advocacy for Individuals with Mental Illness Act of 1986 ("PAIMI Act"), 42 U.S.C. §§ 10801 *et seq.*, the Developmental Disabilities Assistance and Bill of Rights Act of 2000 ("PADD Act"), 42 U.S.C. §§ 15001 *et seq.*, and the Protection and Advocacy of Individual Rights Program ("PAIR Act"), 29 U.S.C. §§ 794e *et seq.* (collectively, "The P & A Acts"). The P & A Acts "provides funding for the states to establish independent organizations…that monitor and protect the rights of the mentally ill." *Advocacy Ctr. vs. Stadler*, 128 F.Supp.2d 358, 360 (M.D. LA 1991) (citing 42 U.S.C. § 10803). DRMS is the federally-mandated and funded P & A system in Mississippi. (DRMS recently changed its name from Mississippi Protection and Advocacy Services, Inc. to Disability Rights Mississippi). *See Mississippi Protection & Advocacy v. Cotten*, 929 F.2d 1054, 1055-56 (5th Cir. 1991). DRMS is required to pursue legal, administrative, and other appropriate remedies to advocate for, and to ensure the protection of, people with disabilities and to investigate the abuse and neglect of such persons if there is probable cause to believe that the incidents occurred. 42 U.S.C. § 6042(a)(2)).

Pursuant to its federal authority, DRMS regularly monitors juvenile justice facilities around the state of Mississippi, including the juvenile detention centers in Harrison, Lauderdale, and Hinds counties, where it conducts monitoring visits pursuant to a Federal Court Order that was requested jointly by Harrison County and DRMS, and Hinds County where it conducts regular monitoring under the P & A Acts[1] *See Exhibit D* ( Agreed Access Order and Settlement Agreement granting access to monitor juvenile justice facilities.)

Defendant Forrest County is the governmental entity with the responsibility to "establish and maintain detention facilities, shelter facilities...or any other facility necessary to carry on the work of the youth court." Miss. Code Ann. § 43-21-109. Thus, Forrest County is the entity with ultimate responsibility to protect and secure the rights of children detained in the Detention Center.

The Detention Center is approximately a 46-bed facility located in Hattiesburg, Mississippi. Although the majority of children housed at this facility are awaiting their court appearances, state law allows juvenile detention centers to house children for 90 days as a post-adjudication disposition. Miss. Code Ann. § 43-21-605(1)(k). A significant number of the youths who are detained at the Detention Center live with disabilities—including various forms

---

[1] Through its contractor, the Mississippi Youth Justice Project (MYJP), DRMS conducts regular monitoring of the Henley-Young Juvenile Detention Center (HYJDC), the Harrison County Juvenile Detention Center (HCJDC), the Oakley Training School (OTS), and the Walnut Grove Correctional Facility (WGCF). HYJDC is located in Jackson, MS and operated by Hinds County. HYJDC houses the children under the jurisdiction of the Hinds County Youth Court who are awaiting court appearances or who have been committed to the detention center. HCJDC is located in Biloxi, MS and operated by a private company, Mississippi Security Police, under a contract with Harrison County. HCJDC houses the children under the jurisdiction of the Harrison County Youth Court who are awaiting court appearances or who have been committed to the detention center. OTS is operated by the Mississippi Department Human Services (DHS) and located in Raymond, MS. OTS houses children who have been committed to DHS pursuant to a delinquency adjudication. WGCF is a Mississippi Department of Corrections (MDOC) Prison, which is operated by Cornell, Inc. WGCG houses children in the custody of MDOC who are between the ages of 13-21.

In 2006, DRMS (then Mississippi Protection and Advocacy Systems Inc.) entered into a contract with MYJP to give MYJP the access rights and privileges that DRMS has under federal law with respect to detention centers, correctional facilities and mental health facilities that house individuals under age 21 who live with mental illness, developmental disabilities, and/or other disabilities. 42 U.S.C. § 10804(a)(1)(A)-(B); 42 C.F.R. § 51.42(a). *See* Exhibit B. This contract was renewed in 2009 under DRMS's new name. Exhibit B. Under these agreements, MYJP may investigate incidents of abuse and/or neglect concerning individuals with mental illness, developmental disabilities, and/or other disabilities under age 21 who are committed to WGCF, OTS, any county jail or detention center, or facilities run by the state Department of Mental Health, to monitor these facilities for compliance with the P & A Laws, and to have access to individual and facility records.

of mental illness and learning disabilities.[2] DRMS has received credible reports of abusive and unlawful conditions at the Detention Center from numerous sources, including from youth who were imprisoned in the Detention Center. The violations of federal law include staff members who punch and strike youth, instances where staff members hogtie children and otherwise subject them to excessive use of restraints, unsanitary living quarters, excessive cell confinement, a lack of educational services, and inadequate mental health treatment. These accounts have been confirmed by multiple media reports and video footage.[3] In addition, DRMS contractors toured the premises and observed unsanitary common and living quarters. Based on these reports, DRMS has more than probable cause to believe that incidents of abuse and/or neglect continue to occur at the Detention Center. Pursuant to the P & A Acts, DRMS asserted its access authority to County Officials summarily denied or ignored each of DRMS's requests.

On January 28, 2011 when SPLC attempted to assert its authority for access, Forrest County Detention Center deviated from its previous policy and federal law and denied SPLC access to the youth. In its communications with County Officials, DRMS also made multiple offers to verbally explain P & A rights and to provide information about DRMS's P & A activities in facilities similar to the Detention Center located elsewhere in the state. Despite these efforts, County Officials refused to allow DRMS to exercises its access authority.

---

This estimate is consistent with prevalence rates reported for incarcerated youth in the state as a whole and nationally. A study funded by the Mississippi Department of Public Safety and the Mississippi Department of Mental Health found that 66% to 85% of incarcerated juveniles in Mississippi suffer from at least one diagnosable mental disorder, compared to only 14% to 20% of youth in the state's general population. Angela Robertson & Jonelle Husain, Mississippi State University, *Prevalence of Mental Illness & Substance Abuse Disorders Among Incarcerated Juveniles* (July 2001). *See also* Angela A. Robertson, et al., *Prevalence of Mental Illness & Substance Abuse Disorders Among Incarcerated Juveniles*, 35 CHILD PSYCHIATRY & HUM. DEV. 55 (2004).

Nationally, "studies have found that among youth in various types of juvenile justice settings—for example, pretrial detention centers where youth are taken soon after arrest—about one-half to two-thirds meet criteria for one or more mental disorders. The prevalence of mental disorders is much higher in juvenile justice settings than it is among youth in the U.S. general population, which is about 15 to 25 percent." Thomas Grisso, *Adolescent Offenders with Mental Disorders*, 18 THE FUTURE OF CHILDREN 143, 150 (2008).

[3] See Exhibit A Media Reports of Abuse from Forrest County Detention Center.

On January 28, 2010, DRMS agents Jody Owens II and Corrie Cockrell arrived at the Forrest County Juvenile Center to conduct monitoring and investigation activities as required by the P & A Acts.[4] DRMS provided County Officials with ample notice of the date and time of the intended visit and had rescheduled this visit once at Defendant's request. Upon their arrival at the Juvenile Center, Detention Center Director Chris Sellman informed Mr. Owens and Ms. Cockrell that they were allowed to tour the facility but not allowed to speak to any youth at the Detention Center. Sellman did not provide written reason for the denial but stated that youth court judges had to approve access for SPLC.

## II. **Discussion**

In order to fulfill its federal mandate, DRMS must have prompt access to residents, facilities and records when it is monitoring a facility or investigating complaints of abuse or neglect that has occurred or may occur in any facility—including correctional facilities and juvenile detention centers—that houses individuals with disabilities. *See* 42 C.F.R. §§ 51.2, 51.41, 51.42; 45 C.F.R. §§ 1386.19, 1386.22. *See, e.g., Mississippi Protection & Advocacy v. Cotten*, 1989 U.S. Dist. LEXIS 17075, at *32 (S.D. Miss. 1989), *aff'd*, 929 F.2d 1054 (5th Cir. 1991); *Advocacy Ctr. vs. Stadler,* 128 F.Supp.2d 358, 361, 363 (M.D. LA 1991).[5] Even without probable cause to believe a particular incident of abuse or neglect took place, designated

---

[4] Federal law permits DRMS to designate agents with whom it contracts to assist in carrying out its responsibilities under federal law. 42 U.S.C. § 10801(b); 42 U.S.C. § 10805(a)(1); 42 C.F.R. § 51.42. Pursuant to this authority, DRMS has contracted with the Mississippi Youth Justice Project (MYJP) to conduct monitoring activities in juvenile justice and mental health facilities that hold children throughout the state of Mississippi. When conducting monitoring under the P & A Acts, MYJP is an agent of DRMS and thus has the same access authority under federal law. Complaint ¶xx; Ex 2. Memorandum of Cooperation between MYJP and DRMS.

[5] The legislative history of the PADD and PAIMI Acts makes clear that Congress intended that the parallel provisions in the Acts be applied in a consistent manner. *See, e.g.,* S. Rep. 454, 100th Cong., 2d Sess. 10 (1988); S. Rep. 109, 99th Cong., 1st Sess. 3 (1986); S. Rep. 113, 100th Cong., 1st Sess. 24 (1987); *Alabama Disabilities Advocacy Program v. J.S. Tarwater Developmental Ctr.*, 894 F. Supp. at 428 (stating that the "legislative history suggests that the record access provisions of the [PADD and PAIMI] acts are meant to be consistent"), *aff'd*, 97 F.3d 492 (11th Cir. 1996). Accordingly, the case law interpreting one P & A program's access provisions is equally applicable with respect to the interpretation of the counterpart provisions in a sister program. *Advocacy Inc. v. Tarrant Count Hospital District*, 2001 WL 1297688 (N.D. Tx. 2001), at *2 n. 4 (Recognizing that because the acts are virtually identical and further the same goal – protecting the rights of vulnerable individuals, judicial interpretation of provisions in the PADD Act are useful for questions raised under a comparable provision in the PAIMI Act); *The Advocacy Center v. Stalder*, 128 F. Supp. 358, 360 n. 2 (M.D. La. 1999) (recognizing that case law under the PADD Act is helpful to the court in determining right to access under the [PAIMI] Act).

organizations are entitled to reasonable unaccompanied access to facilities and their residents in order to monitor facilities' compliance with respect to the rights and safety of their residents. 42 C.F.R. § 51.42(c); 45 C.F.R. § 1386.22(g).

To allow designated organizations to fulfill the purposes of the P & A Acts, Congress empowered them with certain access rights, including the right of access to facilities that provide care or treatment to people with mental illness and the right to access certain records. *See* § 10805(a)(3). As noted *supra* at B, the designated "P & A system" for Mississippi is DRMS.

Under this authority, DRMS has rights to:

1) communicate privately with Detention Center residents, 42 C.F.R. § 51.42 (d) and 45 C.F.R. § 1386.22(h);

2) reasonable unaccompanied access, for monitoring and investigatory purposes, to public and private areas of the Detention Center, 42 C.F.R. § 51.42(b), (c); 45 C.F.R. § 1386.22(f), (g);

3) access to facility incident reports and investigatory findings (including videos, incident reports, grievances, medical and mental health records, staff logs, personnel records, population logs recordings), to investigate abuse/mistreatment of disabled children, 42 C.F.R. § 51.41(c)(2);

4) provide information and training on individual rights and services provided by the P & A system, 42 C.F.R. § 51.42 (c) and 45 C.F.R. § 1386.22(g);

5) interview facility service recipients, staff and other persons as part of an abuse and neglect investigation when there is probable cause to believe an incident of abuse and neglect has, 42 C.F.R. § 51.42(b); and

6) access records of facility residents. 42 C.F.R. § 51.41 and 45 C.F.R. § 1386.22.

Defendant has refused to allow DRMS to exercise each of these rights, in violation of federal law. As shown below, DRMS is entitled to an injunction prohibiting future denials of access to the Detention Center, its records, residents and staff.

Under Fifth Circuit case law, preliminary injunctive relief should be granted if DRMS shows (1) a substantial likelihood of success on the merits; (2) irreparable injury; (3) that threatened injury to DRMS outweighs any injury to the Defendant; and (4) that an injunction is not adverse to the public interest. *Speaks v. Kruse*, 445 F.3d 396, 399-400 (5th Cir. 2006); *Reliant Energy Serv., Inc. v. Enron Canada Corp.*, 349 F.3d 816, 826 n.7 (5th Cir. 2003) (internal quotations and citation omitted). All four requirements must be met. *See Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 363 (5th Cir. 2003). As demonstrated below, all four factors favor granting the preliminary injunctive relief sought by DRMS.

### A. There is a Substantial Likelihood That DRMS Will Prevail on Its Claim that It is Entitled to Access to the Detention Center and to Records.

Under the P & A Acts, a P & A system, such as DRMS, is entitled to access to facilities that provide care and treatment for persons with disabilities—including juvenile detention centers. 42 U.S.C. 10802(2); 42 U.S.C. § 10805(a)(3); 42 C.F.R. 51.2; 45 C.F.R. § 1386.19; *Michigan Protection and Advocacy Service, Inc. v. Miller*, 849 F. Supp. 1201 (granting motion for summary judgment for P & A on claim for declaratory judgment on right of access to juvenile detention facilities). Congress designated two distinct bases for access to facilities and residents: (1) access for the purpose of investigating allegations of abuse and/or neglect, 42 U.S.C. § 15043(a)(2)(B), 42 U.S.C. § 10805(a)(1)(A), 45 C.F.R. § 1386.22(f), 42 C.F.R. § 52.42(b); and (2) access for the purpose of monitoring the facility and the treatment of its residents, 42 U.S.C. § 15043(a)(2)(H), 42 U.S.C. § 10805(a)(3), 45 C.F.R. § 1386.22(g), 42

C.F.R. § 51.42(c). DRMS asserts its rights to access the Detention Center to both investigate allegations of abuse and neglect and to conduct regular monitoring of the facility and its residents.

The federal regulations that accompany the P & A Acts provide guidance regarding the extent of access rights afforded to DRMS. For example, "[a] P & A system shall have reasonable unaccompanied access to public and private facilities and programs in the State which render care or treatment for individuals with mental illness, and to all areas of the facility which are used by residents or are accessible to residents." 42 C.F.R. § 51.42(b). In addition, the regulations further provide that unaccompanied access to facilities shall be allowed "at reasonable times, which at a minimum shall include normal working hours and visiting hours," 42 U.S.C. § 51.42(c), and that this "unaccompanied access to residents of a facility shall include the opportunity to meet and communicate privately with such individuals regularly, both formally and informally, by telephone, mail and in person," 42 C.F.R. 1386.22 (g)-(h).

Despite the authority plainly conferred upon DRMS, the Defendant and its agents have repeatedly prohibited DRMS from exercising its access rights. Moreover, Defendant further violated federal regulations by failing to provide a written explanation for the denial. 42 C.F.R. § 51.43. However, from various communications between DRMS and county officials, the denial appears to be based on a serious misunderstanding of the applicable laws, a failure to read the applicable laws, or a willful disregard of the applicable laws.

In a conversation on January 29, 2011, a Forrest County official suggested that DRMS could not monitor the Detention Center because county officials believed it would be against the law without prior authorization from the youth court judges of the individual youth. 42 C.F.R. § 51.42(e).

Under the plain language of P & A Acts as applied to the indisputable facts, the Defendant wrongfully denied DRMS access to the Detention Center. Thus, there is a substantial likelihood that DRMS will prevail on its claim.

Under the P & A Acts, a P & A system has authority to "investigate incidents of abuse and neglect of individuals with mental illness if the incidents are reported to the system or if there is probable cause to believe that the incidents occurred." 42 U.S.C. § 10805(a)(1)(A). [6] Moreover, Congress has specifically granted DRMS authority to access records of a child with a disability if the DRMS has determined that it has probable cause to believe that such an individual has been subject to abuse and neglect. 42 U.S.C. § 10805(a)(4)(B)). *Stalder* at 366. In this case, DRMS determined from multiple media reports and statements from individual who were formerly detained in the Detention Center that individuals were subject to abuse and neglect.[7] DRMS is the final arbiter of probable cause—which is defined as reasonable grounds to believe that individual with disabilities has been or may be at significant risk of being subject to abuse and neglect. 42 C.F.R. § 51.2; *Advocacy Inc.; v. Tarrant County Hosp. Dist.*, 2001 U.S. Dist. Lexis 16676, at * 9 (N.D. Tex. 1991).

DRMS has received numerous credible reports from a variety of sources documenting the serious and potentially life-threatening abuse and neglect inflicted upon children detained in Detention Center. The unlawful conditions in the Detention Center include unsanitary, inadequate medical and mental health care, a lack of educational services, and 23-hour a day cell confinement. These accounts have come from youth who have been imprisoned in the Detention Center but who have now been released, local media reports including tv, written, and radio and

---

[6] Significantly, the "P & A is the final arbiter of probable cause for the purpose of triggering its authority to access all records for an individual that has been or may be subject to abuse or neglect." *Allen*, 197 F.R.D. at 693. As noted by the Court in *Allen*, "[t]o conclude otherwise would frustrate the purpose of the P & A laws to establish an effective system to protect and advocate for the rights of individuals with disabilities." *Id*. A denial of access to records will prevent the P & A from fulfilling its congressional mandate to investigate incidents of abuse and neglect when it makes a determination of probable cause. *Id*.
[7] See Exhibit A Media Reports of Abuse from Forrest County Detention Center.

the Mississippi Department of Public Safety's Detention Monitoring Unit. DRMS clearly has probable cause to suspect that youth with disabilities detained in the detention center are at a significant risk of being subject to dangerous abuse and neglect.

Several federal cases affirm the Defendants' obligation to provide DRMS with records under these circumstances. In *Stalder*, the plaintiff P & A moved for summary judgment claiming that the PAIMI Act authorized it to access the records of prisoners with mental illness and that neither the department policy of the defendants nor state law could restrict its authority to access these records. 128 F. Supp. 358 (M.D. La. 1999). In granting their motion, the court held that the defendants' failure to grant plaintiff access to the records of prisoners at the correctional facility violated plaintiff's rights under 42 U.S.C. § 10805(a) and 42 U.S.C. § 1983. *Id*. at 368. The court also stated that the PAIMI Act preempts state policy, and that the state statute barring release of prisoner records until they were reviewed by state court was a violation of federal law. *Id*. at 366.

Similarly, in *Tarrant County*, a state hospital asserted that the Texas P & A did not have probable cause to request the records of a deceased resident and that state and federal law prevent the disclosure of confidential records. The court found neither argument persuasive. As to probable cause, the court found that the Texas P & A was the final arbiter of probable cause and that "the facility may not refuse access to records merely because it disagrees with the existence of probable cause." *Tarrant County* at *9. The court further found that allowing P & A access is "not an accusation or indictment of [the facility], but merely allows P &A to comply with a congressional mandate." *Id*. at *12. The court emphasized the importance of access to records to allow the protection and advocacy system to evaluate its clients' concerns, determine whether a client has a legal claim, and communicate with the clients. "When a facility…denies or place restrictions on an advocacy agency's access to records, the mandatory provisions relating to

authority to investigate incidents of abuse and neglect are rendered nugatory. This not only hampers redress of past and current abuse and neglect, but has a detrimental effect on the advocacy agency's future performance of its statutory mandate." *Id.* at * 12 (citing *Cotten*, 929 F.2d at 1056).

Like the defendants in *Stalder* and *Tarrant*, the Defendant in this case has violated federal law by denying access to residents and their records. The great weight of caselaw supports Plaintiffs' contention that it must be permitted immediate access to the detention center. By contrast, there is no case law to support Defendant's denial of access to the Plaintiff.

## B. Plaintiff DRMS is Suffering Irreparable Injury.

In this case, Defendant's denial of access to the Detention Center and its residents and records is preventing DRMS from fulfilling its charge to monitor conditions and protect the rights of people with mental illness and other disabilities. Interference with a P & A's access rights constitutes *per se* irreparable harm. *Ohio Legal Rts. Serv. v. Buckeye Ranch, Inc.*, 365 F.Supp.2d 877, 883 (S.D. Ohio 2005) ("A protection and advocacy agency's inability to meet its federal statutory mandate to protect and advocate the rights of disabled people constitutes irreparable harm.") See also *Conn. Office of Prot. & Advocacy for Persons with Disabilities v. Hartford Bd. of Educ.*, 355 F.Supp.2d 649, 653 (D. Conn. 2005) (same); *Iowa Prot. & Advocacy Serv., Inc. v. Gerard Treatment Programs*, 152 F.Supp.2d. 1150, 1173 (N.D. Iowa 2001) (concluding that the P & A was "irreparably harmed by being prevented from pursuing fully its right to access records and patients . . . in pursuit of its duty to investigate circumstances providing probable cause to believe abuse or neglect has occurred"); *Wisconsin Coalition for Advocacy, Inc. v. Czaplewski*, 131 F.Supp.2d 1039, 1051 (E.D. Wis. 2001) (finding that "the defendant's refusal to provide [the P & A] with records that it is entitled to review (indeed, charged to review as part of its

responsibilities) does, in a very real and readily identifiable way, pose a threat to the [P & A's] being able to discharge its obligations and no amount of damages will remedy that substantial harm").

In *Gerard,* a treatment facility for children denied the Iowa P & A access to records regarding the use of restraints. The P & A requested, among other relief, a preliminary injunction enjoining the institution from denying full and immediate access to the records pursuant to the P & A Acts. 152 F.Supp.2d at 1173. The court found that the P & A was "irreparably harmed by being prevented from pursuing fully its right to access records and patients." *Id.* As a result, the court granted a preliminary injunction providing for immediate access to the records in question and to the facility. *Id.* at 80-84. Like the P & A in *Gerard*, DRMS is irreparably harmed by Defendant's actions preventing DRMS from exercising its federal right to access the Detention Center and its records and detained youth.

Finally, given the grossly unlawful conditions reported at the Detention Center and DRMS' obligation to protect detained children from abuse and neglect, DRMS, through the children its mandated to serve, is irreparably harmed each day the allegations of abuse are not investigated and monitoring activities are prohibited. If DRMS' access is continually denied, children will likely continue to suffer abuse and neglect in the Detention Center— living in unsanitary conditions, denied access to medical, mental health and educational services and being victimized by violent physical abuse. Children forced to endure these unlawful conditions may suffer the consequences of this abuse and neglect for a lifetime.

**C.     The Threatened Injury to DRMS Outweighs Any Damages a Preliminary Injunction May Cause the Defendant.**

In contrast to the irreparable injury to DRMS, Defendant will not suffer any harm if an injunction is granted. The Eleventh Circuit succinctly analyzed this issue in *Alabama Disabilities Advocacy Program v. J.S. Tarwater Developmental Ctr.*:

> The facility's interests surely are less viable and of less import than those of the individual and the P & A. The facility can claim no interest in avoiding investigations of harm or injury to a person with a disability. Minor inconveniences to staff or some disruption of the facility's routine hardly rise to the level of the liberty interest that is generally at issue in a criminal investigation. *Michigan Protection & Advocacy Service, Inc. v. Miller*, 849 F. Supp. 1202, 1208-09 (W.D. Mich. 1994) (defendant's objections that the P & A access to facility for [sic] will interfere with programming have no merit). *Indeed, one would suppose that a facility's legitimate interests are served when abuse and neglect are uncovered and can be corrected.*

97 F.3d 492, 499 (11th Cir. 1996) (emphasis added). As in *Tarwater*, Forrest County's legitimate interests will be served by DRMS's monitoring and investigative activities.

DRMS's mandate of protection and advocacy is entirely consistent with the Defendant's obligation to "establish and maintain detention facilities, shelter facilities...or any other facility necessary to carry on the work of the youth court." Miss. Code Ann. § 43-21-109. The Youth Court's purpose is to ensure that youth under its jurisdiction become "responsible, accountable and productive citizen[s], and that each such child shall receive such care, guidance and control, preferably in such child's own home as is conducive toward that end and is in the state's and the child's best interest." Miss. Code Ann. § 43-21-103. DRMS's statutory authority to monitor conditions at the Detention Center and to investigate possible incidents of abuse or neglect only furthers these shared interests. The Defendant certainly will not be harmed by the requested relief.

**D.     Granting a Preliminary Injunction Does No Disservice to the Public Interest.**

Because the defendants in this case are "public servants charged with the enforcement of the law," it is appropriate to "consider together the balancing of the equities required by test three and the question of whether the injunction would disserve the public interest, which is test four." *Spiegel v. City of Houston*, 636 F.2d 997, 1002 (5th Cir. 1981); *accord Thomas v. Johnston*, 557 F. Supp. 879, 918 (W.D. Tex. 1983). There is no question that both tests are met in this case. As explained above, the relief requested by the Plaintiff—the ability to enforce its access rights pursuant to the P & A Acts—would impose little or no burden on the Defendants.

An injunction that requires compliance with federal statutes serves the public interest by enforcing public policy as expressed in the statutes. *See Nobby Lobby. Inc. v. City of Dallas*, 767 F.Supp. 801, 821 (N.D.Tex. 1991), *aff'd*, 970 F.2d 82 (5th Cir. 1992) ("The public interest always is served when public officials act within the bounds of the law and respect the rights of the citizens they serve."). *See also Patriot, Inc. v. U.S. Dept. of Housing & Urban Dev.*, 963 F.Supp. 1, 11 (D.D.C. 1997) (recognizing that the public interest is served by an injunction that requires compliance with federal law). A preliminary injunction in this case will merely transform the applicable requirements of the P & A Acts into a court order, which will have the effect of enforcing public policy as expressed in the federal statutes. Thus, granting a preliminary injunction in this case will further the public interest, not disserve it.

Further, the public interest is clearly served by ensuring that children under the mandate of care by the Defendant are not subject to unlawful abuse and neglect. It is hard to imagine a more compelling public interest than the protection of vulnerable, disabled children who may be the victims of life-threatening violence and neglect.

### E. The Requirement That a Bond Be Posted Should Be Waived

The Plaintiff respectfully requests that the Court exercise its discretion to waive the bond requirement customarily associated with the issuance of preliminary injunctive relief. *See* Fed. R. Civ. P. 65(c). Several courts have declined to require plaintiffs to post bond in connection with temporary restraining orders and preliminary injunctions. *See Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995) (approving waiver of bond given strength of case and "the strong public interest involved"); *Bookfriends, Inc. v. Talt*, 223 F.Supp.2d 932, 953 (S.D. Ohio 2002) (declining to require bond based on finding that defendants would suffer no monetary damage in the event they were wrongfully enjoined); *Sluiter v. Blue Cross & Blue Shield*, 979 F.Supp. 1131, 1145 (E.D. Mich. 1997) ("Due to the strong likelihood of Plaintiffs' success on the merits and their demonstrated financial inability, the Court finds it would be improper to require any security in this matter."). In this case, several factors counsel in favor of waiver, including the strength of the claims, the strong public interest involved, and the fact that a preliminary injunction would not require the defendants to incur any financial burdens.

## III.  CONCLUSION

For all of the foregoing reasons, DRMS respectfully requests that the Court enter a preliminary injunction enjoining Defendants Forrest County from denying Plaintiff any and all future access to facilities, records, employees, and residents as required by the P & A Acts and its implementing regulations.

This 8th day of March, 2011.

Respectfully submitted,

_Jody E. Owens II_ MS Bar No. 102333
Poonam Juneja, MS Bar No. 103181
Corrie Cockrell, MS Bar No. 102376
Sheila A. Bedi, MS Bar No. 101652
Mississippi Youth Justice Project
A Project of the Southern Poverty Law Center
921 N. President St., Suite B
Jackson, Mississippi 39202
601-948-8882 (phone)
601-948-8885 (fax)


Robert B. McDuff, MS. Bar. No. 2532
767 North Congress Street
Jackson, Mississippi 39202
601-969-0802 (phone)
601-969-0804 (fax)


Wendy White, MS Bar No. 100409
Disability Rights Mississippi
5305 Executive Place
Jackson, Mississippi 39206
601-981-8207 (voice)
601-981-8313 (fax)


Counsel for Plaintiff